THE BOWERY NATIONAL BANK OF NEW YORK, PLAINTIFF, *v.* CATHERINE SNIFFEN, DEFENDANT.

*Husband and wife — note, given by the wife, and indorsed by her husband, the payee, with intent that he discount and take the proceeds of it, does not create a contract between them — 1884, § 2, chap. 381.*

In an action brought upon a promissory note, given in 1887 by a married woman, payable to the order of her husband, who had indorsed the same before its maturity to the plaintiff in the action, a defense was interposed that the maker of the note was a married woman, the wife of the payee, and that the same was delivered without consideration therefor.

*Held*, that the note was either given for value received by the maker, in which case it would have been given for the benefit of her separate estate, or it was a loan of her credit by the wife to the husband, in which latter case it would not constitute a contract between the husband and wife within the exception contained in section 2 of chapter 381 of 1884.

Although the ordinary rule is that a promissory note is a contract between the maker and the payee, yet if the parties to the instrument intend differently there cannot exist any contract relation between them.

In a case in which the maker and payee are wife and husband, and the paper is made for the accommodation of the latter, with the intention that the paper shall be discounted and the proceeds be received by the husband, a contract does not exist until such discount takes place.

That the plaintiff in this case was entitled to recover.

MOTION for a new trial on exceptions ordered to be heard in the first instance at General Term, after a trial and direction of a verdict for the plaintiff at the New York Circuit before the court and a jury, November 23, 1888.

*J. R. Marvin,* for the plaintiff.

*D. T. Walden,* for the defendant.

VAN BRUNT, P. J. :

The complaint alleges that the defendant, Catherine Sniffen, made her certain promissory notes in 1887 and 1888, in writing, and copies of such notes are set forth therein. Each of said notes was in the same form, but varied in amount. The form was as follows:

"Four months after date I promise to pay to the order of John Sniffen, $2,500, at the Bowery National Bank, value received.

"CATHERINE SNIFFEN."

The plaintiff alleged that the defendant delivered the said notes to the payee, who thereafter, and before maturity, indorsed the said notes and for value delivered the same to the plaintiff. The defendant set up that, at the time of the making and delivery of the said notes to Sniffen, the payee thereof, the defendant was a married woman and the wife of said Sniffen, the payee of said notes, and that the same were made and delivered without consideration. The only evidence offered at the trial were the notes and the testimony of the cashier of the defendant, that they were presented for discount by John Sniffen and discounted for him and credit given therefor to him in his account with the bank. And it was admitted that the defendant was a married woman and the wife of John Sniffen. Upon these facts being established, the court directed verdict for the plaintiff and ordered the exceptions to be heard in

## 396　　BOWERY NAT. BANK *v.* SNIFFEN.

the first instance at the General Term.　The plaintiff is undoubtedly a *bona fide* holder of the notes in question, having paid full value therefor to the payee.　But, notwithstanding this fact as the law stood prior to the enactment of chapter 381 of the laws of 1884, no right of recovery existed.

In the case of the *Second National Bank of Watkins* v. *Miller* (63 N. Y., 639) it was definitely held that where a married woman had made certain notes payable to the order of her husband, which were presented by him for discount to the plaintiff, the notes were nullities, and no implication, presumption or impression that she was to be benefited by them in her business or estate could be drawn from their form, or from the fact that she had given them to her husband for the purpose of having them discounted, but that in order to charge her it must be made to appear by evidence *aliunde* the instrument that they were, in fact, made in her separate business or for the benefit of her separate estate.　This same rule was laid down in the *Saratoga County Bank* v. *Pruyn* (90 N. Y., 250).

The question, then, presented is whether the enactment of chapter 381 of the Laws of 1884 has made any change in the law which will support a recovery upon the part of the plaintiff.　The statute is as follows :

"§ 1. A married woman may contract to the same extent, with like effect and in the same form as if unmarried, and she and her separate estate shall be liable thereon, whether such contract relates to her separate business or estate or otherwise, and in no case shall a charge upon her separate estate be necessary."

It is clear that by this section the rules laid down in the cases cited have been abolished, except so far as exceptions arise under the next section, to which attention will be hereafter called ; and that it is no longer necessary, in order to hold a married woman upon her contracts, to prove that the obligation was created by her in or about carrying on her trade or business, or that the contract relates to or is made for the benefit of her separate estate, or that the intention to charge her separate estate is expressed in the instrument by which the liability is created.

The exception, to which attention has been called, is contained in section 2 of the act, which provides that this act shall not apply to any contract that shall be made between husband and wife.

As already stated, unless the obligation which is the subject-matter of this suit is found to come within the restriction of the section last quoted, the plaintiff has a right to recover. The notes in question were either given for value received by the maker, in which case they would have been given for the benefit of her separate estate, and she would be liable upon them, within the principles laid down in *Tiemeyer* v. *Turnquist* (85 N. Y., 516), or it was a loan of her credit by the wife to the husband. The cases already cited show that there is no presumption that the notes were given for value, and, therefore, it must be assumed that they were mere accommodation paper and that they were a loan of her credit by the wife to the husband. If that is the case, then the notes were no contract between the husband and wife. There was no obligation which could be enforced by the husband against the wife under any circumstances. Where two parties execute an instrument without any intention of creating an obligation between them there is no contract. An intention to contract is an essential element of every contract. Therefore, if these were accommodation notes, there was no intention on the part of the maker to contract with the payee, and no intention on the part of either of the parties that any obligation, as between themselves, should be entered into because of the giving of the notes.

Although the ordinary rule is that a promissory note is a contract between the maker and the payee yet, if the parties to the instrument intend differently, it is difficult to see how a contract can spring into existence when neither intended that the act done should result in a contract as between them.

It follows from this, then, that the making of this promissory note by the defendant, and the giving of it to her husband, was not the making of any contract between them and was not intended so to be. When, therefore, did the contractual relation spring into existence? Clearly not until the plaintiffs had discounted the paper in question and given the proceeds of such discount to the husband of the defendant. It was then for the first time that a contract did actually spring into existence, and it was not intended by the parties to this paper until that event took place, that any contract because of the making and delivery of the paper should arise. In the loaning of her credit to her husband the wife took this method, and in

so doing, as already stated, no contractual relation was formed between the husband and the wife, nor was any contract whatever made between them by reason thereof. It would not be contended for a moment that if the husband and wife had been joint makers of this paper, payable to their own order and indorsed by them, that any contract within the exception of section 2 of the act of 1884, would have been entered into. But although the form of the paper is different, yet the substantial liability to the holders of the paper of the husband and wife is the same, each being liable to be pursued for the recovery of the amount agreed to be paid upon the face of the paper.

It may be a question whether it was the intention of the legislature to exempt contracts of this description from the action of the first section of the act of 1884. It may very well be, and probaby was, the intention of the legislature to guard the wife against the making of contracts between herself and her husband which might be enforced by him against her separate estate, and that the policy of the law was not to promote traffic between the two except under the same restrictions that had heretofore existed, and that it was contracts of this character to which the exception in the statute was intended to apply, and not to those transactions which were contracts in form between husband and wife, but which could not be enforced until the right of some third party had intervened. That this interpretation of the act of the legislature is in accord with its intention seems to be fortified by their passage in 1887 of the act (chap. 537), which permits husband and wife to convey directly to each other real estate without the intervention of a third person. By the passage of this act the legislature indicated that it was their policy to allow husband and wife to do directly that which heretofore they had been only enabled to do through the intervention of some third party who really had no interest in the transaction.

It seems to be reasonably clear, that if these notes had been made by the defendant to the order of herself and indorsed by her and given to her husband, and he had had them discounted, that a liability would have arisen; and there could be no question as to its being a contract between husband and wife, and thus within the exception contained in the statute of 1884, and yet, so long as the husband was the holder of the notes, the relation between the husband and

wife in respect to the paper was precisely the same and her obligation under the paper to her husband in no manner varied from what it was in the case at bar. Now, if the notes had been made in that form, and had been discounted by the bank for the benefit of the husband, a recovery could be had, and it would not be deemed a contract between husband and wife merely because they could not be used by the husband for the purpose of having them discounted without his indorsement.

It seems, therefore, that there being no rights whatever conferred upon the husband by reason of the making and delivery of this paper to him, that the notes were not contracts between husband and wife, although, in form, they appeared so to be. The prohibition of the act is against contracts between husband and wife; that is, agreements or instruments made between husband and wife which would be valid contracts under the provisions of the first section. The alleged contract between the husband and wife arising out of the notes in question, being no contract at all, would not be valid even under the broad provisions of the first section of the act in question, and, therefore, the exception contained in the second section can have no application. No contract, therefore, between the husband and wife springing into existence until the plaintiffs became the holder of the paper, and there being no contract between the husband and wife, the provisions of section 1 of the act became applicable.

We are of opinion, therefore, that the plaintiff was entitled to recover, and that the exceptions of the defendant should be overruled and judgment ordered for the plaintiff upon the verdict.

BRADY and DANIELS, JJ., concurred.

Judgment ordered for the plaintiff upon the verdict.